Our final case this morning is Intellectual Ventures v. Ericsson, 2016-18-03. Ms. Wang. Good morning. May it please the Court. In finding Claims 1 and 2 of the 431 patent to obvious, the Board erred in at least four separate ways. First, the Board legally erred by adopting Ericsson's pairwise approach to obviousness. This pairwise approach let Ericsson to ignore the proposed prior art references, the fact that they don't all work together. The second error was there was no substantial evidence to support the Board's finding that a person of skill in the art would have been motivated to combine Lee and Yamaura. Third, Ericsson's petition simply ignored the claim element core band substantially centered at an operating center frequency of the different communication schemes. So there was no substantial evidence to support the Board's finding that the prior art meets that limitation. In your view, does the standard for finding motivation to combine, is it heightened by any degree as a result of having multiple prior references that we're looking at? I mean, if we got two references and we're looking at a motivation to combine issue, but what if we have 12 or 14? Does a number of the prior references affect the motivation to combine analysis? It's not so much that it's the number of prior art references, Your Honor. I think the problem that happened here is that when you're looking at a pair of references, and for example, in this particular case, there were certain claim elements or portions of the claim where Ericsson was relying on more than one reference. And in those situations, what they did was they simply had a reason to combine the references for that particular claim element. And I think that's where the problem is, because there was an assumption that by finding or providing a reason to combine for a particular claim element or a portion of the claim, that was enough to show that all of the references could be combined together. And so the problem that we had here is that there were four references in the first challenge. And there was no evidence whatsoever that a person of skill in the art would have combined all four references together to render the entire claim obvious. And that's where we had the problem. I think the issue there is that we... Let's say you have one reference, and then you show a motivation to combine reference two to it, reference three to it, and you have this wheel hub, spoke type scenario. Isn't that enough to show that if the second, third, and fourth references, you combine them and there's evidence or the motivation to combine at that point, what more do you need to show? Well, I think for purposes... I'm not trying to say that there's some sort of rule that needs to be followed in every case where there has to be a particular couple and another couple and this and this. What we're saying here is that if there's a reason to combine all of the references to render the entire claim obvious, that's enough. It's not enough to say I can combine A and B and C and D, and therefore A, B, C, and D can go together. And the reason for that is that in this particular case, what we pointed out on appeal is that if you put A and B together, then you can't add C and D, because if you do, then A and B no longer work. What if adding them leads to the result where you've met all the claim limitations in the patent? Well, I think that's like the exaggerated situation of... In a typical case, and we know that this court's president says it's not good enough for obviousness to simply find that each individual claim element separately exists somewhere in the prior art. There's got to be a rationale for combining them all together. What we're saying happened here is that there were reasons to combine given for particular claim elements, but then it didn't result in, as a whole, all of these references being combinable together. Isn't the inquiry whether the primary reference could have been modified to include something in the secondary reference, if there's some sort of motivation to do that? So kind of like you could have your primary reference A is modified in view of B, to have a particular feature that B suggests. Maybe it's not all of B, but just a feature that's in B. Because there is motivation to do that. A reasonable fact finder could find that way. And then maybe there's some sort of motivation to further alter B in our view of C, just a feature of C. And so you've got A in view of B in view of C. It sounds to me as if your argument today sounds as if you're saying that when you combine A and B, they've got to fit together neatly, completely. Everything in A must go with B. When in fact, you could modify reference A just to have a particular feature that is suggested by reference B. Isn't that right? Well, it's hard to talk about it in the abstract. So to answer your question, Your Honor, I think it might be helpful to go to the exact scenario that we have here. So here, there we explain why we don't think that Li and Yama-Yura, there was no reason to combine that was specified in the petition. But that's a separate issue. So suppose Li and Yama-Yura can be combined. We know that Erickson relies on Li for the variable bandwidth system. Fine. They rely on Yama-Yura for the core band. Okay. They say that they provided a reason to combine. That's sort of disputed. But what we're talking about is when you add the primary preamble, what they're relying on is Zhuang. They provided a reason to combine Yama-Yura and Zhuang. And what we're saying is that if you put them all together, then you no longer have something that works. So it's not that Li by itself doesn't work. Li, in order to have the variable bandwidth system, has a cluster allocation scheme. And we explain this in the appeal briefs. The cluster allocation scheme is made possible by the particular pilot symbols that are used in Li. Zhuang is being used for primary preamble. And Zhuang has particular symbols. The Li pilot symbols are also in a preamble. So what we're saying is if you put everything together, then you're not going to have the variable bandwidth system anymore. And so that's what the problem is. So here... Prior art patents were combined. It's problematic. Not necessarily the different kind of combinations. This A in view of B. You're not arguing that in every case there has to be a particular way in which prior art is combined. No. I don't think we would be looking for a rule such as that. We're just saying in this particular case, if you want to rely on Li for the variable bandwidth system, then you're stuck with those Li pilot symbols in the preamble. So you can't just plop in the Zhuang pilot sequence and say, look, it all works together because we showed that it works with Yamaura. And that's why I said the problem with looking at this in pairs is that that allowed the board to sort of ignore that Li and Zhuang don't work together. Okay. So moving on, with respect to the motivation to combine that I was talking about for Li and Yamaura, I alluded to this a bit earlier, but the petition itself did not describe a reason to combine Li and Yamaura for purposes of rendering obvious Claim 1 or Claim 2. When IV pointed this out in the Patanona response in a reply, Erickson then identified an argument that it had made with respect to a completely different claim, Claim 8. Under Ariosa Diagnostics, we think it was improper for Erickson to have provided that information for the first time on reply and not in the original petition. But more importantly, Erickson failed to provide any particularized arguments explaining why the motivation to combine for Claim 8 would have been cross-applicable to Claim 1. So we think under Magnum Oil Tools, the board can't rely on arguments based on a different challenge without an explanation of why those arguments would be cross-applicable. Here, the board can't just adopt arguments on behalf of petitioner that could have been made but simply were not made in the petition. So that's another reason why the board's findings should be reversed. Let's go to the missing claim elements. Now we pointed out that there were two separate claim elements that were simply ignored by Erickson in its petition with respect to Claims 1 and 2. That's because the petition was so focused on Claims 8 to 12 and 18 to 22, which had claims that were being asserted against certain Erickson customers in pending litigation in Delaware. So that sort of explains why there was such a focus on those claims. The problem is by incorporating by reference so many of the arguments from Claim 8 into Claim 1, Erickson simply forgot or didn't notice that there were some differences in the claim language. So in particular, we've pointed out two different claim elements. The first one is the substantially centered at an operating center frequency of the different communication schemes. If you go to the petition at page 43, it's A266, Erickson's entire analysis of this claim element is provided in one sentence. Just says, Yamaura discloses all the features recited in Claim Element 1.6. Then there's some cites. That's all. That's not enough because Claim 8 doesn't have the of the different communication schemes language. As a technical matter, when you're referring to of the different communication schemes in this claim, you're referring to having different subcarriers, right? Do I understand that correctly? The preamble provides the antecedent basis for the of the different communication schemes in this particular instance. So it's a variable bandwidth system that has multiple different communication schemes. So it's more than one communication scheme. What are the different communication schemes? Well here, what's interesting is in the petition, by relying solely on Yamaura, that is a system that only has one communication scheme. So Yamaura alone... Because it's not variable bandwidth? Right. There's just one single communication scheme. That's all that Erickson relied on in its petition. Now when we pointed it out, they came back in reply and then they had... Oh, I'm sorry. We pointed out that there was Lee and Lee has variable communication schemes. However, the Lee variable communication schemes are not substantially centered at a single operating center frequency. So to illustrate that, we have a couple of colored pictures in our appeal briefs. Page 51, for example, of IV's appeal brief has a colored picture that kind of shows what happens in Lee with multiple communication schemes. But the point is that Lee doesn't disclose a way of allocating subcarriers symmetrically. So there's not just one center frequency. So in other words, Lee by itself also is not enough for claim element 1.6. Counselor, you wanted to save some rebuttal time. You're into it. You can continue or save it. You know what? I will save the rebuttal time. Thank you. Mr. Lowe. Yes, Your Honor. Good morning. It's at Lee's position that the board got it right. They properly construed the claims, provided a record of that construction, and then based their findings of the teachings of the references as well as the motivations to combine on substantial evidence in the record. I want to go back to something that a patent owner raised, which is this element 1.6 and the evidence surrounding that. With respect to the claim element, it's talking about the different communication schemes. It's referring by antecedent basis, as they recognize, to the preamble. And the disclosure for the different communication schemes is actually found in our section of the petition 1.0. We cite to Lee and say it has different communication schemes. It can provide a first scheme where it identifies a certain number of subcarriers and then it can switch to a second scheme where it has more subcarriers expanding the bandwidth. What page is that on in the record? In the brief? In the appendix. That is appendix 2662 on to 2663. With respect to the centered concept, that is precisely what Yamaura discloses. If you look to the pinpoint side in Yamaura, it says that those narrow control bands are centered within the operating frequency. The combination of those is provided in the petition and then the particularized features were explained further in the reply and they're supported by testimony from Dr. Haas in his supplemental petition as well. He provided a further illustration showing exactly how Lee and Yamaura would be combined to have the different communication schemes as well as the narrow bands centered within those schemes. Another area I'd like to address is the concept of combinability of the references as a whole. There's discussion about combining the Lee reference with Yamaura and then with the Chuang reference. Let me back up just a touch for the technology. This patent is about a variable bandwidth system that then describes how do you accomplish the initial communication with the mobile device as it enters the system. Since there's variability, there needs to be some predefined channels that that mobile device will listen to and then you also need to send preambles because all the transmissions from the base station sound like noise unless you can actually synchronize with the base station. That's what Claim 1 is about. Variable bandwidth is smaller than the smallest operating channel bandwidth or equal to and then specific preambles. During prosecution, the examiner said it's not enough just to have variable bandwidth. That was known. Having the core band or narrow control channels, that was known. It wasn't until the applicant added the specific preamble features that the claim was allowed. These references, the Chuang reference and the Modi and Nobilet and Popovic references have the preambles with those features. The combination here is Lee as that base reference disclosing a variable bandwidth system. It's very much like in KSR. The Asano reference provided the brake system. It provided the structure. Then in KSR, the 936 said put a sensor on the pedal. Then they used the Smith reference and said we'll put the sensor not on the pedal but on structure. Then utilize the Rickson reference to move that sensor onto the structure but onto a piece of structure that doesn't move. There you have four references all aligned each modifying the other into where the location of that sensor would be. Ultimately, the Supreme Court said that's satisfactory. There's no rigid rule into how you apply the references. It simply requires that motivation or reason to look to the references. That's the same as here. The Lee reference is all about the data traffic. It's what happens after communication is established. It doesn't talk about establishing that communication. It does say that there are typically other channels preallocated for other controls such as synchronization. What provides the motivation to pick these references and put them together? You say they're all there. Is it that they're all there and one has reason to experiment and add things or does one need an indication in one of the references to suggest adding something to it? It's really two reasons. One is the Lee reference expressly provides a reason to combine. It was the court's Enray Ethicon decision recently. The reference itself can provide that motivation to say go look to other references to fill this void. The other is it's just known to a person of skill in the art that you need to have synchronization. Your mobile device has to synchronize with the base station. There has to be synchronization occurring before the communication session can happen. With the teachings of Lee, Dr. Haas testified and the board looked at that testimony as well as Lee itself and said yes, there need to be other channels to accomplish that, particularly synchronization issues. Yamaura provides specific examples of how to accomplish that in a narrow band, described using just a narrow band, to get the benefit that the phone doesn't have to decode all the subcarriers. It only needs to decode a small set of subcarriers, thereby saving battery life. And then Yamaura says within that narrow band, let's have preambles so that we can have synchronization and those preambles should have good correlation properties. But it doesn't say what kind of sequences should we send in those preambles. So a person of skill in the art is going to look to another reference and say okay, what are some good sequences, chirp-like sequences that have good correlation properties, auto-correlation, low peak-to-average power ratio, and so that's the combination that's being made. Correlation, that's something that's common for this type of control sequence that you're talking about? Yes, to accomplish the synchronization. Yamaura talks about using the preambles and that the preambles have correlation properties, but doesn't provide what would those sequences actually be that you would transmit, whereas Yamaura is all about identifying optimal sequences that can be transmitted, either as pilots at the beginning of a transmission, or Zhuang talks about, I'm sorry, preambles at the beginning of the transmission, or pilots. So these sequences could be used in either place, but the teaching of Zhuang is they can be preambles at the beginning of the transmission, so that's preambles, and so that's the combination that's being made is Li, then Yamaura adds the narrow band control signals before the communication, including preambles, and then the specific preambles that need to be transmitted are identified in Zhuang. What's the advantage of putting the correlation sequences in the preamble as opposed to the pilot? The preamble is at the beginning of the transmission, and so before that, let's say it's a mobile device, a cell phone, it has no idea what all those ones and zeros and everything flying around, it doesn't know where to start, so it's looking to identify something that it knows, and then once it knows that, so it's a known sequence, it says, aha, I found the beginning of the communication, now I can synchronize and make sure that I'm synchronized with the base station, and then let me listen to the rest of the message, see if it's a good one. Let's see, I also raised a question about inoperability with respect to combining all the features from the Zhuang reference and applying those back into the Li reference, and that's simply not the standard of combination. Taking the teachings of one reference and using those teachings to modify another reference is the appropriate approach. We in our petition are not suggesting that we modify the pilot symbols of Li that are within the data channels, we are adding preambles in front of the Li communication, because the Li system itself doesn't describe how do you initialize the communication session, and the board found that a person of ordinary skill would have looked elsewhere for control and synchronization channels prior to establishing communication with a mobile station, and found that supported by Li's explicit disclosure that there are typically other channels preallocated, as well as the testimony of Dr. House. You may have addressed this earlier, but does your mora say why it is that you would want to have the control signals centered? I don't believe, I can't recall that it expressly does, but that's definitely the disclosure that it has, that they would be centered, and that the other subcarriers would be on either side of that centered core band. Back to inoperability, basically that's not our argument. We are adding preambles, and preambles of a certain kind, to Li. We're not changing the pilot symbols as patent owners suggested, so that's simply a straw man argument that they're raising. It has no issue here. I did want to, if the court would be interested, address, they made an argument concerning claim construction. You move on, and I want to ask before you run out of time too, and I guess this goes back to Judge Lori's question, the concern I have here is one of hindsight, and going back and finding obviousness, not from the point of view of a procedure at the time of the invention, but now, as we understand the invention. It seems to me you have a lot of separate pieces that are being brought together in the various references, and I'm not completely satisfied that the board has given us an adequate explanation as to why all the pieces together work, or why would you put all these pieces together? I think I read somewhere that there are separate pieces of a puzzle out there, and what's the authority that exists on that? Right, Your Honor. I think in this situation, it's that the references themselves to make an operational system based on the teachings of Lee, one needs to have this initial communication between the base station and the cell phone to accomplish synchronization, and to know, am I the phone that's being called? Lee doesn't address that, and so a person of skill in the art knows you have to have this other part, and so really the references are complementary. Lee is about variable bandwidth for data traffic, Yamaura is about how do you set up the control and provide preambles, and then what kind of preambles, that's answered by Hsuang. So those elements are complementary to build the system. It's not as though you're taking one and subbing in something else, removing pieces. You're simply trying to build, in our petition, build the operational system by the elements that are required, as known by a person of skill in the art. Again, I did want to address the claim construction of the court. You have a couple of minutes left. Okay, Your Honor. They raised the concept that the board got the claim construction wrong on substantially not wider. The board found that not wider means equal to or less than, plain and ordinary meaning. It's their position that using the word substantially somehow takes away the equals to and means that it has to be significantly less than. That's simply just, it's not supported by the specification. There's no reason for such a narrow construction, and it's also contrary to what they told the patent office to obtain the patent. They told the patent office substantially is a word of approximation, and it's in there because there are tolerances and variabilities in these systems. So I think the board got it right, and it follows the plain and ordinary meaning. I believe that's it, if there are any further questions. Thank you. All right, thank you. Mr. Lowe's. Ms. Wine has a couple of minutes of rebuttal time. I wanted to just address a few things that came up in Mr. Lowe's argument. First of all, I wanted to point out once again, Erickson submitted no evidence whatsoever, let alone substantial evidence that a person of skill in the art would have combined all of the references together to render the entire claim obvious. Second, with respect to the discussion about other channels in Lee. If you go to Lee at appendix 732, column five around line 13 is where the board said, well, here the Lee reference says that there are typically other channels pre-allocated for the exchange of control information, and then they gave, as an example, uplink and downlink control. Now, the problem here is the board actually agreed with IV after the hearing, if you go to A18, the board decision, the board acknowledges that Lee does teach uplink and downlink control. In other words, if uplink and downlink control are already in Lee, then why would you look elsewhere? That was precisely our point there, that there is really no explanation if Lee already has that information, why would you look outside of Lee? Going back to claim element 1.6, Mr. Lowe's talked a bit about Dr. Haas' testimony regarding why Lee and Yamayura would be put together for purposes of the different communication schemes. In our appeal brief, we point out that it's just a conclusory statement by Dr. Haas that doesn't address how you would actually put Lee and Yamayura together, knowing that Lee only teaches looking at the strongest or the best signal-to-noise ratio when doing its cluster allocations. How would you force that to be proportional like Yamayura? The other point I wanted to raise is, I think, Judge Stoll, you asked Mr. Lowe's about the centering of the narrow band in Yamayura. The benefit of Yamayura isn't that the narrow band is centered. In fact, the very first embodiment in Yamayura, if you look at figure 5, A749, the narrow band is actually in the side band or the guard band. It doesn't have to be centered, so that's an incorrect assumption. But it does teach, at least in one embodiment, that it's centered, isn't that correct? It does have an embodiment where it's centered. You're just saying they don't say why you would want to center it? No. In fact, the first embodiment, it's not centered. With respect to the claim construction issue, under Microsoft versus Proxicon, the board's construction cannot be divorced from the specification in the record evidence, and it must be consistent with the one that a person skilled in the art would reach. The board's decision on claim construction meets none of those requirements. Doesn't the specification at the top of column 5 say that it should be not greater than, it says the core band, I think it says a core band, substantially centered at the operating center frequency is defined as a frequency segment that is not greater than the smallest operating channel bandwidth. So why isn't their construction consistent with that? That's exactly the point, your honor. That's the definition of core band. So core band itself covers not greater than, which is less than or equal to. When you add the words substantially not wider that aren't in any of the other claims, this is just in claim 1, it's a limitation there, it has to have some meaning. So if you're saying the core band has to be substantially not wider, the core band shouldn't mean the same thing without the substantially not wider modifier. So just as a- Thank you, counsel. Your time is up and we have your case, so we will take it under advisement. Okay, thanks so much.